IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

GENE MARTIN BURKE, et al.

      Plaintiffs,

v.                                                                                               Case No. 3:15-cv-75

THOR MOTOR COACH, INC., et al.,

      Defendants.

## OPINION

In 2014, Gene and Virginia Burke bought a brand new RV made by THOR Motor Coach, Inc. ("Thor"), with a chassis manufactured by Freightliner Custom Chassis Corporation ("FCCC"). The RV turned out to be a lemon, according to the Burkes. After several unsuccessful attempts to resolve various mechanical and aesthetic problems, the Burkes sued both Thor and FCCC under both federal and state warranty enforcement laws. Thor filed the instant motion to dismiss, arguing that Virginia's lemon law excludes from liability all motor-home manufacturers except those that make the vehicle's chassis.

Case law on this point conflicts, so Thor asks this Court to certify the question to the Supreme Court of Virginia. After considering the statute's language, the Court concludes that Virginia's lemon law attaches liability to motor home defects only with respect to the motor home's "self-propelled motorized chassis." Because Thor did not manufacture the chassis in question, Thor cannot be held liable under Virginia's lemon law. Accordingly, the Court denies the motion to certify and grants the motion to dismiss Count II as against Thor.

## I. FACTS AND PROCEEDINGS

On February 26, 2014, Gene and Virginia Burke purchased a brand new 2014 Thor Palazzo RV motor home from Safford RV, LLC, a Thor-authorized dealer. (Compl. ¶ 6.) According to the Burkes, Freightliner Custom Chassis Corporation ("FCCC") manufactured the motor home's chassis, and Thor Motor Coach, Inc. ("Thor"), manufactured the remainder of the vehicle. (Compl. ¶¶ 3-4.) Almost immediately after the purchase, problems arose with the vehicle, including mechanical issues with the engine, brakes, heating, and water system, aesthetic blights in the interior, and overall shoddy workmanship throughout. (*See* Compl. ¶ 11-14.) The Burkes took the vehicle to FCCC's South Carolina facility for inspection and repairs, but the fixes did not last. (Compl. ¶ 14-16.) After the vehicle continued to have problems, the Burkes took it to Thor's manufacturing facility in Indiana, but three weeks' worth of repairs did not solve the problems. (Compl. ¶ 18.) The Burkes then hired an attorney and tried to get their money back, to no avail. (Compl. ¶ 21-25.) The Burkes then filed this action against Thor and FCCC under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 (Count I), and Virginia's lemon law, the Virginia Motor Vehicle Warranty Enforcement Act, Va. Code § 59.1-207.9, *et seq.* (Count II).

Thor filed two motions in response, both related to Count II. First, Thor seeks dismissal of Count II under Rule 12(b)(6), arguing that Virginia's lemon law does not apply to manufacturers of the non-chassis portions of a motor home. Case law on this issue points in opposite directions, however, so Thor filed a second motion asking the Court to certify the following question to the Supreme Court of Virginia:

> Does the Virginia Motor Vehicle Warranty Enforcement Act ("lemon law") apply to a "final stage manufacturer" of a motor home who does not manufacture the self-propelled motorized chassis of the motor home?

2

The Burkes oppose both motions and contend that the lemon law applies to all portions of a motor home, and, therefore, Thor may be held liable for the defects in their RV.

## II. DISCUSSION

In Count II, the Burkes' complaint alleges a violation of the Virginia's lemon law, Va. Code § 59.1-207.9, *et seq.* The lemon law allows a purchaser of a vehicle to file suit against the vehicle manufacturer, its agents, or authorized dealers if the vehicle does not conform with "any applicable warranty." Va. Code § 59.1-207.14.[1] According to Thor, the law does not cover entire motor homes, but only a motor home's self-propelled motorized chassis. Because Thor did not manufacture the chassis, it asks the Court to dismiss Count II as against Thor.[2]

Thor points out that two federal cases from the Western District of Virginia addressed the exact issue in this case, but came to opposite conclusions. In light of this disagreement, Thor thinks the issue should be certified to the Supreme Court of Virginia for conclusive clarification.

### A. Motion to Certify Question to the Supreme Court of Virginia

Under Rule 5:40 of the Rules of the Supreme Court of Virginia, a federal district court may certify a question of Virginia law, so long as that question "is determinative in any proceeding pending before the certifying court and it appears there is no controlling precedent on point in the decisions of [the Supreme Court of Virginia] or the Court of Appeals of Virginia." The decision to certify a question remains entirely within the district court's discretion. *Lehman Bros. v. Schein*, 416 U.S. 386, 390-91 (1974). As a part of this discretion, the district court considers not only the "imposition on the time and resources of the Supreme Court of Virginia,"

---

[1] Specifically, the Act focuses on manufacturers, their agents, or authorized dealers that "do not conform the motor vehicle to any applicable warranty by repairing or correcting any defect or condition, including those that do not affect the driveability of the vehicle, which significantly impairs the use, market value, or safety of the motor vehicle to the consumer after a reasonable number of attempts during the lemon law rights period." Va. Code § 59.1-207.13.
[2] The plaintiffs do not contend that Thor manufactured any part of the chassis.

3

but also the effect on the time and resources of the parties, the protraction of the proceedings, and judicial efficiency. *W. Am. Ins. Co. v. Bank of Isle of Wight*, 673 F. Supp. 760, 764 (E.D. Va. 1987).

Although no binding decision of the Virginia law answers the question posed in this case, and although two decisions from the Western District of Virginia collide, the question does not merit certification to the Supreme Court of Virginia. This Court regularly interprets Virginia law and must "decide questions of state law, even if difficult and uncertain, when necessary to render judgment."[3] *Legard v. EQT Prod. Co.*, 771 F. Supp. 2d 607, 609 (W.D. Va. 2011). Here, neither complexity nor efficiency counsels in favor of certifying the question to the Supreme Court of Virginia. The parties have adequately briefed the issue, and the Court has spent significant time and energy considering the state-law question; certification would create an unnecessary detour. Accordingly, the Court denies the motion to certify.

### B. Motion to Dismiss[4]

#### 1. Statutory Definitions

Because this case turns on statutory definitions, any analysis begins with the language of the relevant statutes.

---

[3] *See, e.g., Bohannon v. LVNV Funding, LLC*, 2015 WL 893362, at *4 (E.D. Va. Mar. 2, 2015) (deciding whether a warrant in debt under Virginia law constitutes a "formal pleading" within the Fair Debt Collection Practices Act, 15 U.S.C. § 1692e(11)); *DCG&T ex rel. Battaglia v. Knight*, 68 F. Supp. 3d 579, 2014 WL 7272941, at *7-11 (E.D. Va. 2014) (interpreting several provisions of the Virginia Stock Corporation Act, Va. Code § 13.1-601, *et seq.*); *Baker v. Elam*, 883 F. Supp. 2d 576, 578-79 (E.D. Va. 2012) (interpreting the Virginia Consumer Protection Act, Va. Code § 59.1-200, *et seq.*); *Perry v. Judd*, 840 F. Supp. 2d 945, 951 (E.D. Va. 2012) (interpreting Virginia's primary election statutory scheme).

[4] A Rule 12(b)(6) motion to dismiss gauges the sufficiency of a complaint, assuming all well pleaded facts to be true. *Unus v. Kane*, 565 F.3d 103, 115 (4th Cir. 2009). To survive a 12(b)(6) motion to dismiss, a complaint must state facts that, when accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The lemon law applies to "motor vehicles," which it defines as:

> only passenger cars, pickup or panel trucks, motorcycles, self-propelled motorized chassis of motor homes and mopeds as those terms are defined in § 46.2-100 and demonstrators or leased vehicles with which a warranty was issued.

Va. Code § 59.1-207.11. The definitions section from Virginia's motor vehicle title, located at § 46.2-100, provides the following relevant definitions of the vehicles listed in the lemon law[5]:

> "Passenger car" means every motor vehicle other than a motorcycle or autocycle designed and used primarily for the transportation of no more than 10 persons, including the driver.
>
> "Motor home" means every private motor vehicle with a normal seating capacity of not more than 10 persons, including the driver, designed primarily for use as living quarters for human beings.

Va. Code § 46.2-100. Because both "passenger car" and "motor home" include the word "motor vehicle," the definition of that term from § 46.2-100 should also be highlighted:

> "Motor vehicle" means every vehicle as defined in this section that is self-propelled or designed for self-propulsion except as otherwise provided in this title. Any structure designed, used, or maintained primarily to be loaded on or affixed to a motor vehicle to provide a mobile dwelling, sleeping place, office, or commercial space shall be considered a part of a motor vehicle. Except as otherwise provided, for the purposes of this title, any device herein defined as a bicycle, electric personal assistive mobility device, electric power-assisted bicycle, or moped shall be deemed not to be a motor vehicle.

*Id.* The problem comes from the incorporation by reference of the definitions in §46.2-100.

The lemon law definition of a motor vehicle explicitly includes passenger cars and other motor vehicles but only covers the "self-propelled motorized chassis of a motor home." Read alone, this indicates a simple solution to this case: the manufacturer of parts of a motor home other than the chassis is not covered by the lemon law. But the lemon law then incorporates by reference §46.2-100, which defines a passenger car to be a motor vehicle, and defines a motor

---

[5] The Court omits the definitions for "pickup or panel truck," "motorcycle," and "moped" because the parties raise no argument that the Burkes' RV qualifies as any of those vehicles. They focus their arguments solely on the scope of "passenger car" and "motor home."

5

vehicle to include any attached mobile dwellings and sleeping places—precisely what makes a motor home a motor home. The statute does not define a self-propelled motorized chassis as a separate component of a vehicle.[6] Relying on these definitions, the plaintiffs argue that the manufacturer of the "dwelling" or "sleeping space" has manufactured part of a motor vehicle, that the definition of a motor vehicle includes a passenger car as a motor vehicle, and therefore the manufacturer of all the motor home is covered by the lemon law.

### 2. The *Parks* and *Reynolds* Cases

Construing these definitions, the United States District Court for the Western District of Virginia reached opposite conclusions in two cases. The first case, *Parks v. Newmar Corporation*, 384 F. Supp. 2d 966 (W.D. Va. 2005), did not dwell on whether the lemon law covered the entire motor home, but focused instead on whether the defendant had "assembled" any portion of the chassis. *See Parks*, 384 F. Supp. 2d at 970. Implicit in that holding, however, was the assumption that the limiting language of the lemon law's definition of "motor vehicle" (*i.e.*, "*only* . . . self-propelled motorized chassis of motor homes") necessarily excluded every part of the motor home except the self-propelled motorized chassis. *See id.* at 969. Under this logic, a final-stage manufacturer that did not assemble or manufacture any portion of the motor home's chassis could not be held liable under Virginia's lemon law.

The second case, *Reynolds v. Freightliner LLC*, No. 4:07-cv-001, 2007 WL 2220569 (W.D. Va. Aug. 2, 2007), reached the opposite conclusion through a more comprehensive analysis of the definitions recited above. The court set aside the *Parks* case as unpersuasive given that *Parks* "did not consider the effect of section 46.2-100 on section 59.1-207.11."

---

[6] The Court understands the term to refer to "the frame, wheels, and engine of a motor vehicle, but not the body." *Parks v. Newmar Corp.*, 384 F. Supp. 2d 966, 969 (W.D. Va. 2005) (citing *Webster's New World Dictionary* (1984)).

6

*Reynolds*, 2007 WL 2220569, at *6 n.1. Comparing the definitions provided in each section, the *Reynolds* court concluded that "passenger car" included a motor home. Moreover, given that passenger car's definition included "[a]ny structure designed, used, or maintained primarily to be loaded on or affixed to a motor vehicle to provide a mobile dwelling, sleeping place, office, or commercial space" as a part of the vehicle, the lemon law covered the entire motor home. *Id.* at *5 (quoting Va. Code § 46.2-100). With respect to the specific carve-out for a motor home chassis in the lemon law, the court said this language simply clarified that the chassis manufacturer could be held liable even when that manufacturer did not also manufacture the rest of the motor home. *Id.* at *7. Under this logic, the manufacturer of almost any portion of the motor home could be held liable under Virginia's lemon law.

### 3. Analysis

This case obviously presents several problems in logic. We all know the familiar mathematical syllogism "if A equals B, and B equals C, and C equals D, then A equals D." And that is the essence of the plaintiff's argument: the dwelling part of a motor home is part of a motor vehicle. A motor vehicle includes a passenger car. A passenger car is clearly covered by the lemon law. Therefore, the non-chassis part of the motor home is covered by the lemon law.

This Court, however, finds that the plaintiffs missed a turn in their statutory analysis derived from *Reynolds*.

In some respects, the conclusion from *Reynolds* makes good sense. The Virginia General Assembly passed the lemon law in recognition of the fact that "a motor vehicle is a major consumer purchase, and there is no doubt that a defective motor vehicle creates a hardship for the consumer." Va. Code § 59.1-207.10. The lemon law gives the consumer a remedy for that difficult situation. *Id.* Because motor homes and RVs come with a hefty price tag, one could

7

easily assume that purchasers of those vehicles should get the full benefits of the lemon law. Nonetheless, the General Assembly specified a narrow definition of "motor vehicle" for purposes of the lemon law. *See id.* § 59.1-207.11. Both the narrowness of this definition and the meanings of the terms within it convince the Court that Virginia's lemon law does not cover the entire motor home, but only its self-propelled motorized chassis.

Start with the lemon law's list of motor vehicles covered by the act: "*only* passenger cars, pickup or panel trucks, motorcycles, self-propelled motorized chassis of motor homes, and mopeds." Va. Code § 59.1-207.11 (emphasis added). The term "self-propelled motorized chassis of motor homes" clearly excludes the rest of the motor home by referring to a very specific portion of the vehicle. Had the legislature intended to include the entire motor home, it could have listed "motor homes" without qualification as it did with passenger cars, pickup or panel trucks, motorcycles, and mopeds.

The *Reynolds* court reasoned that the General Assembly listed "self-propelled motorized chassis of motor homes" to emphasize additional liability when a separate company manufactured the chassis, but the Court disagrees for two reasons. First, the explanation ignores the limitation of the word "only" at the start of the list. By emphasizing the inclusion of *only* those motor vehicles listed, the lemon law creates a limitation of liability, not an expansion. Concluding that "*only* self-propelled motorized chassis of motor homes" essentially means "motor homes *and also* their self-propelled motorized chassis" goes against the flow of the statute's language. It renders the words "self-propelled motorized chassis" superfluous.

Second, the explanation proves too much, because the statute lacks that same specificity in relation to passenger cars, trucks, motorcycles, or mopeds. Under the *Reynolds* court's logic, the statute's silence on any other vehicle's chassis means that the law does not cover other types

of chassis-only manufacturer. This seems a backwards result. Instead, the most logical reading of the list of motor vehicles includes all parts of a passenger car, pickup or panel truck, motorcycle, or moped, and only the self-propelled motorized chassis of a motor home. This conclusion, in and of itself, convinces the Court that the lemon law does not cover the remaining portions of the motor home.

Review of the relevant definitions from § 46.2-100 only bolsters that conclusion. The *Reynolds* court engaged in this task and deemed the motor home a type of passenger car. *Reynolds*, 2007 WL 2220569, at *7. Unfortunately, this conclusion ignores that motor homes and passenger cars, as those terms are defined by § 46.2-100, are mutually exclusive:

> "Motor home" means every private motor vehicle with a normal seating capacity of not more than 10 persons, including the driver, *designed primarily for use as living quarters for human beings*.
>
> "Passenger car" means every motor vehicle other than a motorcycle or autocycle *designed and used primarily for the transportation of no more than 10 persons*, including the driver.

Va. Code § 46.2-100 (emphases added). The primary design and use of the vehicle show the key distinction between a passenger car and a motor home.[7] "'[P]rimary' when applied to a single subject often means first, chief, or principal." *Bd. of Governors of the Fed. Reserve System v. Agnew*, 329 U.S. 441, 446 (1947); *see also PREVOR v. Food & Drug Admin.*, 895 F. Supp. 2d 90, 98 (D.D.C. 2012) ("Primary means principal, first among others, foundational." (citation omitted)). Certainly, people sleep in their cars, but that does not turn a passenger car into a motor home. Nor does using the motor home exclusively for driving between hotels on long journeys turn a motor home into a passenger car. What matters, with respect to the motor home,

---

[7] The Court notes that "motor home" covers only "private motor vehicle[s]," whereas "passenger car" has no specific delineation between private and public ownership. This distinction has no impact on the applicability of the lemon law under these facts.

9

is the primary purpose of the design of the vehicle. Under Virginia law, motor homes are not passenger cars.

In sum, both the plain language of the lemon law's list of motor vehicles and a logical analysis of the applicable definitions result in the conclusion that the lemon law applies to the self-propelled motorized chassis of a motor home, but no other portion of that vehicle.

### 4. Thor Cannot Be Held Liable Under Count II

The Burkes allege only that the Thor Palazzo RV they purchased is a "motor vehicle" as defined by the lemon law, but the complaint makes clear that their vehicle is a motor home. Several of the alleged defects could only occur in a vehicle "designed primarily for use as living quarters for human beings": a poorly reinforced shower wall; an improperly repaired bathroom door; an inadequate television system; an inoperable washer; a stuck overhead bunk; and a noisy microwave. (Compl. ¶ 11.) Additionally, although neither § 46.2-100 nor § 59.1-207.11 defines "recreational vehicle," both Virginia courts and statutes use the term interchangeably with "motor home." *See, e.g., Poland v. Poland*, No. 15272-01, 2005 WL 4277920, at *4 (Va. Cir. Ct. Aug. 19, 2005) (referring to a "recreational vehicle" as a "motor home" in a list of assets); *cf.* Va. Code § 46.2-1162 (explaining the application of safety inspection regulations to "recreational vehicles commonly known as 'motor homes'"); *id.* § 46.2-1500 (defining "recreational vehicle" to include "motor homes, travel trailers, and camping trailers" with respect to motor vehicle dealer regulations). Throughout the complaint, the Burkes use the term "recreational vehicle" or "RV" to describe the motor vehicle they purchase. (Compl. ¶¶ 3, 4, 6, 9.) The Burkes' motor vehicle is a motor home, and, therefore, subject to the lemon law's limits.

The complaint identifies FCCC, not Thor, as "[t]he chassis manufacturer of the RV in question." (Compl. ¶ 4.) Thor's role in manufacturing the rest of the motor home is not so clear,

but whatever else Thor did, it did not manufacture the chassis. Because Thor did not manufacture the chassis, the Burkes cannot hold Thor liable under the lemon law.

### III. CONCLUSION

The Court may not ignore the rules of the road under Virginia's lemon law. The Court grants Thor's motion and dismisses Count II as against Thor.

The Court will enter an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: July 9, 2015
Richmond, Virginia

/s/ 
John A. Gibney, Jr.
United States District Judge

11